UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENE RAYMOND BELL, JR.,

                              Case No. 19-13565

          Plaintiff,               Hon. Gershwin A. Drain

vs.

OFFICER ANTHONIE KORKIS, *et al.*,

          Defendants.

_____/

## **OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS [#25]**

### I. INTRODUCTION

Plaintiff Gene Raymond Bell, Jr. brings the instant civil rights action against City of Southfield Police Officers Anthonie Korkis, Arthur Bridgeforth, and Thomas Langewicz alleging the officers violated his Fourth Amendment right to be free from the use of excessive force during a June 23, 2019 traffic stop and arrest. Now before the Court is the Defendants' Motion to Dismiss, filed on December 16, 2020. Plaintiff filed a Response to the Defendants' Motion to Dismiss on January 12, 2021, and Defendants filed their Reply on January 26, 2021. A hearing was held on April 26, 2021. For the reasons that follow, the Court will deny the Defendants' Motion to Dismiss.

## II.    FACTUAL BACKGROUND

On June 23, 2019, Plaintiff was travelling through the City of Southfield in a 2003 Chevrolet Trailblazer.  ECF No. 21, PageID.239.  Defendant Korkis was traveling in a marked police car behind the Plaintiff.  *Id*.  Korkis conducted a random license plate verification on the Trailblazer, which revealed the Secretary of State had no record of the plate.  *Id*.  Korkis initated a traffic stop. *Id*.  Plaintiff attempted to pull over by turning into a driveway but missed the turn. *Id*. Plaintiff proceeded to the next driveway and to a parking lot.  Defendant Korkis can be overheard through in-car audio referring to the Plaintiff as a "f**king idiot" prior to exiting his patrol vehicle.  *Id*.

Defendant Korkis approached the driver's side of the Trailblazer and asked for Plaintiff's license, registration and insurance information.  *Id*. at PageID.240. Plaintiff inquired as to the reason he had been pulled over, however Defendant Korkis stated that information would be given once Plaintiff provided his license, registration and insurance. *Id.* Defendant Korkis then advised the Plaintiff  there would be four additional patrol cars on the scene and that Plaintiff would be pulled out of his car and arrested for resisting and obstruction for not providing the requested information.  *Id*. Plaintiff informed Defendant Korkis that if he was going to be placed under arrest, he would exit the vehicle on his own.  Defendant

Korkis responded "we're going to do it our way," then reached into Plaintiff's vehicle. *Id*.

Defendant Korkis and the other Defendant Officers Bridgeworth and Langewicz, who had arrived on scene, began to forcefully remove Plaintiff from his vehicle, threatening to break his hand while pointing a Taser at him. *Id*. Specifically, Defendant Korkis, a Caucasian male, yelled, "Boy! I'll break your f**king hand" to Plaintiff, an African American male. *Id*. Plaintiff again offered to exit the vehicle on his own, however the Defendants forcefully removed him from the car and violently threw him to the ground and deployed a Taser gun twice while Plaintiff was already on the ground.

Plaintiff filed the instant action in the Oakland County Circuit Court on September 5, 2019 against the Defendant Officers and the City of Southfield. Plaintiff properly served the City of Southfield. The City removed the case to this Court on December 3, 2019.

On November 3, 2020, the Court issued an Opinion and Order granting the Plaintiff's Motion to Amend Complaint and denying the Defendant City of Southfield's Motion for Judgment on the Pleadings. *See* ECF No. 16. Plaintiff sought to dismiss the City of Southfield and his state law claims of false arrest, malicious prosecution and abuse of process leaving only the excessive force claim

against the Defendant Officers.  In granting the Plaintiff's Motion to Amend, the Court rejected as premature the City's argument that the Plaintiff's amendment was futile because the Defendant Officers were entitled to qualified immunity.  *Id*. at PageID.222-23.  At the time the Court issued its November 3, 2020 decision, the Defendant Officers had not yet been served with the Summons and Complaint. Thus, the issue of the individual officers' right to rely on qualified immunity to shield them from liability was not properly before the Court.  *Id*.  The Court ordered the Plaintiff to file an amended complaint and serve the Defendant Officers within thirty days.  *Id*. at PageID.228-29.

Plaintiff filed his First Amended Complaint on November 11, 2020.  The Defendant Officers filed their Motion to Dismiss on December 16, 2020, arguing Plaintiff's Amended Complaint omits necessary information that demonstrates the officers are entitled to qualified immunity because they did not use excessive force, nor violate clearly established law.  Specifically, Defendants refer the Court to the transcript from the Plaintiff's plea hearing in the 46th District Court for the City of Southfield on November 7, 2019. *See* ECF No.9, PageID.149.

At the hearing, Plaintiff entered a plea of guilty to the misdemeanor charge of resisting and obstructing an officer and admitted responsibility to the civil infraction of driving a vehicle with an expired license. *Id*. at PageID.157.   In so

doing, Plaintiff admitted that the Defendants were engaged in an investigation and by refusing to give them his identification, insurance and registration, he obstructed the investigation. *Id*. at PageID.157. Plaintiff was originally charged with one count of misdemeanor driving while license suspended, misdemeanor operating an unregistered vehicle and misdemeanor resisting and obstructing a police officer. *Id.* at PageID.152. The City agreed to dismiss the driving while license suspended charge and to amend the misdemeanor unregistered vehicle charge to a civil infraction of driving with an expired plate. *Id*.

Defendants further direct the Court to view the Defendants' in-car videos from the traffic stop. *See* ECF No. 9, Exs. 3-5. Defendants complain that Plaintiff fails to mention in his operative pleading that Defendant Korkis requested Plaintiff's information on numerous occasions and Plaintiff refused to provide it. The officers' in-car videos show that after his fourth request, Defendant Korkis reported over the radio that he was dealing with an uncooperative driver. After additional requests for his information, Defendant Korkis advised Plaintiff that he would be arrested for resisting and obstructing if he refused to provide the information. At one point, Plaintiff attempted to move his vehicle and Defendant Korkis told him not to put the car in drive.

When Defendants Bridgeforth and Langewicz arrived, Bridgeforth approached the passenger side of the vehicle, and Langewicz parked his vehicle in

front of the Plaintiff's Trailblazer to prevent Plaintiff from attempting to move it. Bridgeforth explained to Plaintiff that once he provided the requested information, he would be given the reason for the stop. After numerous additional requests and denials for the information, Defendant Korkis informed Plaintiff he was going to be arrested. Plaintiff responded that he would exit the vehicle by himself. Defendant Korkis reached to unlock the door, and a struggle ensued between Plaintiff and Defendants Korkis and Langewicz with both officers yelling, "don't do it" several times.

Once the driver's door was open, Defendant Korkis told Plaintiff to get on the ground. Plaintiff said, "I'm not going to get on the ground." Defendant Korkis yelled "get on the f**king ground!" Plaintiff responded that he was not going to get on the ground. Defendant Korkis forcibly took Plaintiff to the ground and Defendant Langewicz stepped on Plaintiff while he was face down on the ground causing abrasions to Plaintiff's face. While Plaintiff remained pinned underneath the weight of Langewicz, Langewicz yelled at Plaintiff to give him his arm. Plaintiff failed to obey Langewicz's command. Langewicz deployed his Taser at least twice. Thereafter, Defendants placed Plaintiff in handcuffs and the officers assisted him into a seated position on the ground next to the Trailblazer.

## III.   LAW & ANALYSIS

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*

(citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 1950.

The district court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001). Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Id.*

## B.  Qualified Immunity & Fourth Amendment Excessive Force

Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Chapman v. Brown*, 814 F.3d 447, 457 (6th Cir. 2016) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). In determining whether a law enforcement officer is entitled to qualified immunity on an excessive force claim, two questions must be evaluated. *Kent v. Oakland Cty.*, 810 F.3d 384, 390 (6th Cir. 2016).  The first inquiry in the qualified immunity analysis is whether, based on the facts alleged and considered "in the light most favorable to the party asserting the injury," the official's conduct violated the plaintiff's constitutional rights under the Fourth Amendment.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

If the district court finds a Fourth Amendment violation, the next step is to determine whether the right was clearly established at the time of the incident.  *Id*. at 202.  The district court may address the qualified immunity analysis in any order.  *Kent*, 810 F.3d at 390.  The plaintiff bears the ultimate burden of proof, *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) (citation omitted), and if the plaintiff fails to carry his burden as to either element of the qualified immunity analysis, then the Defendants are immune from suit.  *Cockrell*

*v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012). A court can dismiss a complaint under Rule 12(b)(6) and the doctrine of qualified immunity "if it is clear that no violation of a clearly established right could be found under any set of facts that could be proven consistent with the allegations or pleadings." *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005).

Claims alleging the use of excessive force during an arrest are considered under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Utilizing this standard, the Court must determine whether Defendants' actions are "objectively reasonable in light of the facts and circumstances confronting [the]m, without regard to [their] underlying intent or motivation." *Id.* at 397. To make this determination, the Court must balance the following three factors enunciated by the *Graham* court: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "The ultimate question, however, is whether the totality of the circumstances justifies a particular sort of seizure." *Kent v. Oakland Cty.*, 810 F.3d 384, 390 (6th Cir. 2016). The district court "must take into account the fact that police officers are often forced to make split-second

judgments – in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation."*Id*

Here, while Plaintiff's allegations omit certain information from evidence appearing in the court record, these omissions do not undermine the viability of Plaintiff's excessive force claim. Defendants argue there was no Fourth Amendment violation because they are permitted to use physical force to remove an individual from a vehicle when the individual refuses to comply with commands to exit. *See* ECF No. 25, PageID.272 (citing *Ryan v. Hazel Park*, 279 F. App'x 335, 338 (6th Cir. 2008)).

In *Ryan*, the plaintiff led the officers on a police chase for eight minutes, failed to follow commands to show her hands once stopped, and refused to exit the vehicle requiring that the officer "forcibly remove Ryan from the vehicle" who resisted the officer's efforts. *Id*. at 337. Once the *Ryan* plaintiff was out of the vehicle, she tensed her muscles in an apparent effort to resist being handcuffed. *Id*. Thus, even though the initial stop was for a minor traffic violation, the *Ryan* plaintiff "committed the felony offenses of fleeing and eluding and assaulting, resisting or obstructing an officer." *Id.* at 338. Additionally, she "posed an immediate threat to herself and the officers" because she "refused to place her vehicle in park, and it continued to push against [the officer]'s cruiser even after the chase ended." *Id.* Lastly, she "actively resisted arrest and attempted to evade

arrest." *Id.* Thus, based on the totality of the circumstances, the *Ryan* court concluded the officers' actions were objectively reasonable. *Id.*

In this case, Plaintiff alleges the Defendants were objectively unreasonable in forcibly removing him from the Trailblazer. The holding in *Ryan* is not so broad as to cover the conduct complained of in this action. Unlike the facts in *Ryan*, Plaintiff's crime of resisting and obstructing the investigation of a minor traffic violation is not a serious felony offense similar to the fleeing and eluding and assaulting, resisting or obstructing an officer offenses committed in *Ryan*. Moreover, the *Ryan* plaintiff refused to exit her vehicle, posed an immediate threat to herself, and the officers, and actively resisted arrest, circumstances that are not present in this case.

Defendants' reliance on *Dunn v. Matatall*, 549 F.3d 348, 354 (6th Cir. 2008) is also unhelpful to their position. The *Dunn* plaintiff led officers on a two minute high speed chase and ran multiple traffic signals through a residential neighborhood. *Id.* at 350. Once he was stopped, he refused to get out of the car and struggled with the officer trying to remove him from the vehicle. *Id*. at 351. The Sixth Circuit concluded the officers were reasonable to "physically remov[e] Dunn from his vehicle" after he led officers on a high speed chase and refused officer commands to exit the vehicle. *Id*. at 354.

Unlike the facts present here, the *Dunn* plaintiff's high speed chase, eluding the officers and refusal to exit the vehicle rendered it reasonable for the officers to be apprehensive about the potential that the *Dunn* plaintiff had a weapon or was going to use the car as a weapon. *Id*. In this case, Plaintiff did not elude the officers and place the public in danger. He did not refuse to show his hands, and nor did he refuse to exit the vehicle. He was not given the option to exit the vehicle on his own accord. There was no apparent reason for the officers to forcibly remove Plaintiff from the vehicle and slam him to the ground when they had not attempted to place him in handcuffs. At that time, Plaintiff was not threatening the officers' safety or actively resisting arrest.

Defendants also assert that it was constitutionally permissible to use a Taser during the course of Plaintiff's arrest because of Plaintiff's "demonstrated resistance." ECF No. 25, PageID.275. Defendants rely on *Hagans v. Franklin Cty. Sheriff's Off.*, however, their reliance is again misplaced because the suspect in *Hagan* was *actively* resisting arrest. 695 F.3d 505, 507 (6th Cir. 2012) (emphasis supplied). In this case, Plaintiff alleges he was slammed face down to the ground with Langewicz placing his leg and weight on top of him. Langewicz claims Plaintiff was resisting. Plaintiff counters he was unable to unpin his arm from underneath when Langewicz was on top of him.

A review of Defendants' in-car videos does not contradict Plaintiff's version of events because the videos provide an obstructed view of the traffic stop and arrest. At the hearing on this matter, Defendants argued *Bailey v. City of Ann Arbor*, supported their argument that dismissal under Rule 12(b)(6) is appropriate. 860 F.3d 382, 387 (6th Cir. 2017). However, *Bailey* stands for the proposition that where "pleadings internally contradict verifiable facts[,]" in the record and central to the Plaintiff's claim, Plaintiff's allegations are rendered implausible. *Id.* Unlike *Bailey*, the verifiable facts from the in-car videos tend to support, rather than contradict, Plaintiff's allegations that he did not pose a threat to officers or the public. Thus, the in-car video evidence does not conclusively establish Langewicz's use of the Taser was objectively reasonable.

Lastly, the Sixth Circuit's decision in *Ashford v. Raby*, 951 F.3d 798 (6th Cir. 2020), is distinguishable from the facts present in this action. The *Ashford* suspect led the officers on a high speed chase and refused to take his foot off of the gas pedal and get out of the vehicle once he was stopped. *Id.* at 800-01. Therefore, the officer's use of a police dog to effectuate Plaintiff's arrest was not objectively unreasonable, nor did it violate clearly established law. *Id.*

In conclusion, Plaintiff plausibly alleges forcibly removing him from the vehicle and slamming him face down on the ground, along with multiple uses of a Taser gun, for a traffic violation and misdemeanor obstructing and resisting charge,

when he was not actively resisting arrest, nor a danger to himself, the officers or others, violated his Fourth Amendment rights. Finally, it is clearly established that forcibly removing from a vehicle and "tasering a non-threatening suspect who [i]s not actively resisting arrest[,] constitute[s] excessive force." *Brown v. Chapman,* 814 F.3d 447, 462 (6th Cir. 2016); *see also Kijowski v. City of Niles*, 372 F. App'x 595, 600-01 (6th Cir. 2010) (officers violated clearly established rights when they dragged an unresisting man from his truck and tasered him). Because the Court concludes a Fourth Amendment violation "could be proven consistent with the allegations" in the First Amended Complaint, Defendants are not entitled to Rule 12(b)(6) dismissal. *Jackson,* 429 F.3d at 589.

## IV.    CONCLUSION

Accordingly, for the reasons articulated above, Defendants' Motion to Dismiss [#25] is DENIED.

SO ORDERED.

Dated: May 5, 2021                    /s/Gershwin A. Drain
                                      GERSHWIN A. DRAIN
                                      United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 5, 2021, by electronic and/or ordinary mail.

/s/ Teresa McGovern

Case Manager