UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENE RAYMOND BELL, JR.,

        Plaintiff,

                               Case No.: 19-cv-13565

v.                             Hon. Gershwin A. Drain

ANTHONIE KORKIS *et al.*,

        Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' FIRST MOTION IN LIMINE [ECF No. 108]; GRANTING DEFENDANTS' SECOND MOTION IN LIMINE [ECF No. 109]; GRANTING DEFENDANTS' THIRD MOTION IN LIMINE [ECF No. 110]; DENYING DEFENDANTS' FOURTH MOTION IN LIMINE [ECF No. 111]; GRANTING IN PART AND DENYING IN PART DEFENDANTS' FIFTH MOTION IN LIMINE [ECF No. 112]; GRANTING IN PART AND DENYING IN PART DEFENDANTS' SIXTH MOTION IN LIMINE [ECF No. 113]; GRANTING IN PART AND DENYING IN PART DEFENDANTS' SEVENTH MOTION IN LIMINE [ECF No. 114]; GRANTING DEFENDANTS' EIGHTH MOTION IN LIMINE [ECF No. 115]; GRANTING IN PART AND DENYING IN PART DEFENDANTS' NINTH MOTION IN LIMINE [ECF No. 116]; GRANTING DEFENDANTS' TENTH MOTION IN LIMINE [ECF No. 122]; GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANTS' ELEVENTH MOTION IN LIMINE [ECF No. 123]; GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANTS' TWELFTH MOTION IN LIMINE [ECF No. 124]; GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART PLAINTIFF'S FIRST MOTION IN LIMINE [ECF No. 117]; DENYING WITHOUT PREJUDICE PLAINTIFF'S SECOND MOTION IN LIMINE [ECF No. 118]; GRANTING**

1

**IN PART AND DENYING IN PART PLAINTIFF'S THIRD MOTION IN LIMINE [ECF No. 119]; DENYING IN PART AND DENYING WITHOUT PREJUDICE IN PART PLAINTIFF'S FOURTH MOTION IN LIMINE [ECF No. 120]; AND DENYING PLAINTIFF'S FIFTH MOTION IN LIMINE [ECF No. 121; ECF No. 125]**

## I.     INTRODUCTION

Plaintiff Gene Raymond Bell, Jr. claims that Defendant Officers Anthonie Korkis, Arthur Bridgeforth, and Thomas Langewicz, II used excessive force while arresting him during a traffic stop on June 23, 2019 in Southfield, Michigan. ECF No. 21, PageID.239, 241. After nearly five and a half years of litigation and two interlocutory appeals to the Sixth Circuit Court of Appeals, this case is finally slated for trial on April 8, 2025. *See* ECF No. 103. Presently before the Court are the parties' seventeen Motions in Limine, seeking to exclude various arguments, testimony, and evidence at trial.

Upon review of the parties' briefing, the Court concludes that a hearing will not aid in the disposition of these Motions. Therefore, it will determine their outcomes on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court concludes that:

1.  Defendants' First Motion in Limine [ECF No. 108] is GRANTED IN PART AND DENIED IN PART;

2.  Defendants' Second Motion in Limine [ECF No. 109] is GRANTED;

3.  Defendants' Third Motion in Limine [ECF No. 110] is GRANTED;

4.  Defendants' Fourth Motion in Limine [ECF No. 111] is DENIED;

5.  Defendants' Fifth Motion in Limine [ECF No. 112] is GRANTED IN PART AND DENIED IN PART;

6.  Defendants' Sixth Motion in Limine [ECF No. 113] is GRANTED IN PART AND DENIED IN PART;

7.  Defendants' Seventh Motion in Limine [ECF No. 114] is GRANTED IN PART AND DENIED IN PART;

8.  Defendants' Eighth Motion in Limine [ECF No. 115] is GRANTED;

9.  Defendants' Ninth Motion in Limine [ECF No. 116] is GRANTED IN PART AND DENIED IN PART;

10. Defendants' Tenth Motion in Limine [ECF No. 122] is GRANTED;

11. Defendants' Eleventh Motion in Limine [ECF No. 123] is GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART;

12. Defendants' Twelfth Motion in Limine [ECF No. 124] is GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART;

13. Plaintiff's First Motion in Limine [ECF No. 117] is GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART;

14. Plaintiff's Second Motion in Limine [ECF No. 118] is DENIED WITHOUT PREJUDICE;

3

15. Plaintiff's Third Motion in Limine [ECF No. 119] is GRANTED IN PART AND DENIED IN PART;

16. Plaintiff's Fourth Motion in Limine [ECF No. 120] is DENIED IN PART AND DENIED WITHOUT PREJUDICE IN PART; and

17. Plaintiff's Fifth Motion in Limine [ECF No. 121; ECF No. 125] is DENIED.

## II.    BACKGROUND

On June 23, 2019, Plaintiff was driving a vehicle through Southfield, Michigan, when he was pulled over by Defendant Korkis. ECF No. 21, PageID.239. Defendant Korkis had conducted a random license plate search and discovered that there was no record of Plaintiff's plate, which is what precipitated the traffic stop. *Id.* at PageID.240.

When Defendant Korkis approached Plaintiff's vehicle, he asked for Plaintiff's license, registration, and proof of insurance. *Id.* Plaintiff did not comply with this demand and instead questioned why Defendant Korkis pulled him over. *Id.* Defendant Korkis refused to tell Plaintiff why he had pulled him over, stating that he would do so only after Plaintiff provided his documentation. *Id.* Defendant Korkis and Plaintiff argued for three minutes, with Defendant Korkis demanding Plaintiff's documentation and Plaintiff demanding to know what he had done wrong and why he had been pulled over. *See* ECF No. 36, PageID.370. Ultimately, Defendant Korkis called backup—Defendants Bridgeforth and Langewicz—and warned Plaintiff that

4

he would be pulled out of his car and arrested for resisting and obstructing. ECF No. 21, PageID.240.

Once Plaintiff learned he was about to be arrested, he offered to exit the vehicle on his own. *Id.* However, Defendant Korkis would no longer allow that, stating that the officers were "going to do it [their] way." *Id.* Thereafter, Defendants forcibly removed Plaintiff from the vehicle and forced him to the ground. *Id.* When Plaintiff failed to comply with repeated requests to give Defendants his hands, one of the Defendants tased him. *Id.* at PageID.371. As a result of this encounter, Plaintiff alleges that he suffered physical injuries and emotional and psychological distress. *See* ECF No. 21, PageID.242; ECF No. 134, PageID.1991–95.

Plaintiff filed a complaint against Defendants Korkis, Bridgeforth, Langewicz, and the City of Southfield in Oakland County Circuit Court, asserting multiple causes of action. *See* ECF No. 1, PageID.7–14. Defendants removed the case to federal court. *Id.* at PageID.1–5. Once in federal court, Plaintiff amended his complaint to bring a sole claim for excessive force under 42 U.S.C. § 1983, and dropped his other causes of action and the City of Southfield from the suit. *See* ECF No. 21.

The remaining Defendants filed a Motion to Dismiss, and later a Motion for Summary Judgment, on qualified immunity grounds. The Court denied both

Motions. *See* ECF No. 31; ECF No. 94. Defendants filed interlocutory appeals after each denial.

In addressing Defendants' Motion to Dismiss, the Sixth Circuit divided the use of force into two segments and analyzed them separately: (1) Plaintiff's removal from the vehicle, and (2) Plaintiff's tasing. ECF No. 36, PageID.369. Beginning with Plaintiff's removal, the Sixth Circuit noted that there was a dispute of fact between Plaintiff and Defendants about how the verbal altercation escalated to Plaintiff's physical removal from the vehicle. *Id.* at PageID.370. Plaintiff alleged that the physical struggle began when Defendant Korkis grabbed him through the window of the vehicle despite Plaintiff never physically resisting. *Id.* Defendants, in contrast, alleged that Plaintiff initiated the struggle by touching Defendant Korkis's hand when he reached into the window to unlock Plaintiff's car door. Because the dashcam footage of the altercation did not "blatantly contradict[] nor utterly discredit" Plaintiff's claim that Defendant Korkis initiated the physical struggle, the Sixth Circuit lacked jurisdiction to address the issue of whether the removal of Plaintiff from the vehicle constituted excessive force.[1] *Id.* at PageID.370.

---

[1] To the extent that video footage contradicts or discredits a plaintiff's allegations in the complaint, courts are permitted to consider it when ruling on qualified immunity in a motion to dismiss. However, if the video footage does not clearly contradict plaintiff's version of events, courts must treat plaintiff's allegations as true. *See* ECF No. 36, PageID.368.

Next, in analyzing the tasing, the Sixth Circuit held that Plaintiff's right not to be tased under the circumstances was not clearly established.[2] The Sixth Circuit determined that the video footage clearly showed Plaintiff resisting arrest at the time Defendants tased him. *Id.* at PageID.372–73. For that reason, Defendants were entitled to qualified immunity on the tasing alone. *Id.*

The Sixth Circuit's decision on Defendants' Motion for Summary Judgment was no different. It determined that the video footage and other evidence was still not clear as to whether Plaintiff initiated contact with Defendant Korkis when he reached into Plaintiff's car window, or if Defendant Korkis initiated physical force despite lack of resistance.[3] Therefore, it dismissed the issue for lack of jurisdiction yet again. *See* ECF No. 98.

With the case back before this Court, the parties are now proceeding to trial on April 8, 2025. The parties filed, in total, seventeen Motions in Limine which are presently before the Court. Defendants seek to exclude or limit the following

---

[2] Officers are entitled to qualified immunity unless they (1) violated a constitutional right (2) that was clearly established at the time of wrongdoing. Courts are free to resolve the case on either prong. *See* ECF No. 36, PageID.371.

[3] The Sixth Circuit noted that Defendants did not argue that their use of force was justified even if Plaintiff had not touched Defendant Korkis's hand. As such, the Sixth Circuit stated that it would "not consider" the legal question of whether force would have been justified by Plaintiff's verbal resistance alone. ECF No. 98, PageID.1238 n.1; *see also* ECF No. 36, PageID.370 n.1 (the Sixth Circuit's ruling pertaining to Defendants' Motion to Dismiss, noting that Defendants had based their argument on Plaintiff's verbal *and physical* resistance).

evidence, arguments, testimony, and topics: appeals to passion; evidence of Plaintiff's concussions; Plaintiff's proposed Department of Justice exhibit; evidence of Plaintiff's "good character"; any argument challenging the legality of the stop, arrest, and grounds for removal; references to race; evidence of certain damages; undisclosed witnesses; arguments that contradict the Sixth Circuit's rulings in this case; references to abuse Plaintiff suffered from Dr. Robert Anderson; references to the City of Southfield's self-insurance or collective bargaining agreement; and any improper force analysis.

Plaintiff, for his part, seeks to exclude or limit the following evidence, arguments, testimony, and topics: Plaintiff's driving record and warrants; Defendant's expert report and testimony; any reference to Plaintiff knowing why he was stopped; evidence relating to Plaintiff's transport to and booking at the Southfield Police Department; and evidence relating to Defendants' ability to pay punitive damages.[4]

---

[4] Plaintiff filed the Motion in Limine seeking to exclude evidence of Defendants' ability to pay punitive damages twice. *See* ECF No. 121; ECF No. 125. Both Motions are identical. Hereinafter, the Court will only cite ECF No. 125, although its decision will dispose of both ECF No. 121 and ECF No. 125.

### III.   LAW & ANALYSIS

### a.  Motion in Limine Standard

Although the Federal Rules of Evidence do not expressly authorize *in limine* rulings, the practice of deciding motions *in limine* "was developed pursuant to a district court's inherent authority to manage the course of trials." *Aetna, Inc. v. Blue Cross Blue Shield of Mich.*, No. 11-15346, 2015 WL 1646464, at *1 (E.D. Mich. Apr. 14, 2015) (citing *United States v. Luce*, 469 U.S. 38, 41 n.4 (1984)). Motions *in limine* are used to "ensure evenhanded and expeditious management of trials" by preemptively "eliminating evidence that is clearly inadmissible for any purpose." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (E.D. Mich. 2004).

"[O]ne practical difficulty in ruling on such motions is the absence of context that comes when the challenged evidence is presented with the other proofs at trial." *Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc.*, 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007). Thus, unless "evidence is clearly inadmissible on all potential grounds[,]" a court generally should defer such rulings "until trial so that questions of foundation, relevancy[,] and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. Whether to grant a motion *in limine* falls within the sound discretion of the trial court. *Branham v. Thomas Cooley Law Sch.*, 689 F.3d 558, 560 (6th Cir. 2012). The trial court is not bound by its *in limine* rulings, and it may change its determinations "where sufficient facts have developed

to warrant the change or even if nothing unexpected happens at trial." *Aetna, Inc.*,

2015 WL 1646464, at *1 (citing *Luce*, 469 U.S. at 41–42).

### b. Federal Rules of Evidence 401, 402, and 403

Federal Rule of Evidence 402 states that relevant evidence is generally

admissible, unless the United States Constitution, a federal statute, the Federal

Rules, or other rules prescribed by the Supreme Court state otherwise. Fed. R. Evid.

402. In contrast, "[i]rrelevant evidence is not admissible." *Id.* Evidence is considered

relevant if "(a) it has any tendency to make a fact more or less probable than it would

be without the evidence; and (b) the fact is of consequence in determining the

action." Fed. R. Evid. 401. "The standard for relevancy is extremely liberal." *United*

*States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006) (quoting *Douglass v. Eaton*

*Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992)) (internal quotation marks omitted). Even

if the evidence would be "insufficient to prove the ultimate point for which it is

offered, [a court] may not exclude the evidence if it has the slightest probative

worth." *Id.* at 738–39 (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462,

475 (6th Cir. 1996)).

Notwithstanding Rule 402's liberality, a court may exclude relevant evidence

"if its probative value is *substantially* outweighed by a danger of… unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). Even under

Rule 403, "the cards are stacked in favor of admissibility—only when the risk of prejudice is both *unfair* and *substantially weightier* than any probative value does the court have discretion to exclude the evidence." *United States v. Lang*, 717 Fed. App'x 523, 531 (6th Cir. 2017). "Because Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly." *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996).

### c. Defendants' First Motion in Limine: Appeals to Passion

#### i.    Parties' Arguments

Defendants' first Motion in Limine requests the Court to preemptively exclude any "appeals to passion" before the jury. ECF No. 108, PageID.1271. The "appeals to passion" that Defendants specifically seek to exclude are (1) telling the jury to "send a message" with their ruling, (2) asking the jury to "stand in Plaintiff's shoes," or (3) referencing unrelated police use-of-force incidents. *Id.* at PageID.1271–72. Defendants note that police uses of force have "garner[ed] significant media attention" and have become "polarizing" in recent years. *Id.* at PageID.1278. Defendants argue that such references are irrelevant under Federal Rule of Evidence 402 or more prejudicial than probative under Federal Rule of Evidence 403. *Id.* at PageID.1279.

11

Plaintiff responded in opposition. *See* ECF No. 130. Plaintiff argues that because punitive damages are available in this case, asking the jury to send a message or to stand in Plaintiff's shoes is permissible. *Id.* at PageID.1914–15.

### i.    Analysis

Arguments that ask the jurors to send a message with their verdict ("Send a Message" arguments) or to put themselves in the plaintiff's shoes ("Golden Rule" arguments) "encourage[] the jury to make moral or social judgments rather than determining the facts." *Locke v. Swift Transp. Co. of Ariz.*, No. 5:18-CV-00119-TBR, 2019 WL 6037666, at *2 (W.D. Ky. Nov. 14, 2019) (regarding "Send a Message" arguments); *see also Johnson v. Howard*, 24 Fed. App'x 480, 487 (6th Cir. 2001) (regarding "Golden Rule" arguments). Such arguments "can have no appeal other than to prejudice" and serve as an "improper distraction from the jury's sworn duty to reach a fair, honest and just verdict." *Strickland v. Owens Corning*, 142 F.3d 353, 359 (6th Cir. 1998). Accordingly, "Send a Message" arguments "are disfavored in the Sixth Circuit[,]" *Brooks v. Caterpillar Glob. Mining Am., LLC*, No. 4:14CV-00022-JHM, 2017 WL 3401476, at *8 (W.D. Ky. Aug. 8, 2017), and "Golden Rule" arguments are "universally condemned" as improper. *Johnson*, 24 Fed. App'x at 487 (citations omitted).

When punitive damages are available in a case, however, "Send a Message" arguments—specifically, imploring the jury to send a message to the defendants

12

through its punitive damages award—may be permissible, given that the purposes of punitive damages are "deterrence and retribution." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003); *see, e.g.*, *Clark v. Chrysler Corp.*, 436 F.3d 594, 610 (6th Cir. 2006) (finding that the plaintiff's "Send a Message" during opening argument did not require new trial where punitive damages were available).

In this case, punitive damages may be appropriate if the jury finds that Defendants' conduct was driven by evil motive or intent, or reckless or callous indifference to Plaintiff's rights. *See King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015). Plaintiff argues that this fact permits him to raise both "Send a Message" and "Golden Rule" arguments. Yet Plaintiff has cited no authority for the contention that the possibility of punitive damages allows him to raise a "Golden Rule" argument. As noted, such arguments are "universally condemned." *Johnson*, 24 Fed. App'x at 487. Thus, as to "Golden Rule" arguments, Defendants' Motion is GRANTED.

On the other hand, Plaintiff may argue that the jury should "send a message" with its verdict on punitive damages, as long as any such argument is appropriately aimed at retribution for the instant conduct and deterring Defendants' use of excessive force in the future.[5] *Clark*, 436 F.3d at 609–10. Thus, as to "Send a Message" arguments, Defendants' Motion is DENIED.

---

[5] The Court cautions Plaintiff that such arguments are only narrowly permissible. Asking the jury to "send a message" with punitive damages to punish Defendants for unrelated conduct, or to "send a message" to law enforcement or society in

Finally, as to Defendants' request to exclude references to other unrelated instances of police uses of force, Plaintiff raised no opposing argument in his response. The Court agrees with Defendants that references to unrelated use of force incidents are irrelevant to the matter at hand, or at least more prejudicial than probative. Other courts have held the same. *See, e.g.*, *Mathis v. Tourville*, No. 08-12969, 2010 U.S. Dist. LEXIS 21381, at *3 (E.D. Mich. Mar. 9, 2010) ("[T]he existence of other notorious police brutality cases has no bearing."); *Silva v. Chung*, No. 15-00436 HG-KJM, 2019 U.S. Dist. LEXIS 85667, at *5–*6 (D. Haw. May 21, 2019); *Every v. City of Thibodaux*, No. 14-2369, 2016 U.S. Dist. LEXIS 204006, at *3 (E.D. La. Sept. 27, 2016). Therefore, as to such references, Defendants' Motion is GRANTED.

### d. Defendant's Second Motion in Limine: Concussion Evidence

Defendants' second Motion in Limine asks the Court to exclude evidence of the five concussions that Plaintiff suffered during his football career under Federal Rule of Civil Procedure 37(c), because he did not disclose them during discovery pursuant to Federal Rule of Civil Procedure 26(a) or (e). ECF No. 109, PageID.1293–94. Plaintiff did not respond to Defendants' Motion.

---

general, is improper. *See, e.g.*, *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 422–23 ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages."); *Clark*, 436 F.3d at 610.

Under our Local Rules, a party is required to respond to a motion. E.D. Mich. L.R. 7.1(c)(1). A party's failure to respond to a motion "indicates that they waive any opposition to it." *Drakes Collision, Inc. v. Auto Club Grp. Ins. Co.*, No. 19-13517, 2021 WL 4264751, at *3 (E.D. Mich. Sept. 20, 2021) (citing *Notredan, LLC v. Old Republic Exch. Facilitator Co.*, 531 Fed. App'x 567, 569 (6th Cir. 2013)); *Murray v. Geithner*, 763 F. Supp. 2d 860, 871–72 (E.D. Mich. 2011) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived, and grant the motion." (citation omitted)). Therefore, Defendants' Motion is GRANTED.

### e.  Defendants' Third Motion in Limine: Department of Justice Exhibit

i.    <u>Parties' Arguments</u>

In their third Motion in Limine, Defendants request the Court to exclude an exhibit—a Department of Justice ("DOJ") guide entitled "Law Enforcement Best Practices" (the "Guide")—that Plaintiff disclosed for the first time on February 28, 2025. ECF No. 110, PageID.1309. Defendants argue that this Guide is not relevant because it was published *after* the date that Defendants arrested Plaintiff, and because the Guide states that it is designed to help law enforcement executives and leaders develop new policies (and is therefore not a definitive guide for officers on the ground). ECF No. 110, PageID.1308, 1310. Defendants also argue that

15

introduction of this Guide is more prejudicial than probative because it is unfair for Defendants to be judged based on a document that was not in existence at the time of Plaintiff's arrest, and because it will confuse the jury about the proper issues in the case. *Id.* at PageID.1310–11. In addition, Defendants claim that Plaintiff's attempt to introduce the Guide is his attempt to "develop expert testimony" that is favorable to himself, despite never identifying an expert in this case. *Id.* at PageID.1311.

Plaintiff responded, arguing that the document is relevant even though it was published after Plaintiff's arrest. Plaintiff likens the Guide to Defendant's expert Dr. Steven Amey, stating that if this Guide is misleading for the jury, then Defendant's expert is as well. ECF No. 131, PageID.1927–28. Plaintiff also contends that the Guide is not expert evidence, but rather a self-authenticating official publication that can be judicially noticed. ECF No. 131, PageID.1928–29.

ii.    <u>Analysis</u>

The Court agrees with Defendants that the DOJ Guide is more prejudicial and confusing than probative, if not entirely irrelevant to the case at hand. As an initial matter, the DOJ published the Guide four months after the events of this case transpired. It would be unfair to hold Defendants to standards publicized after the use of force in question. *See, e.g.*, *Guthrie v. Ball*, No. 1:11-cv-333-SKL, 2014 WL

16

5471531, at *4 (E.D. Tenn. Oct. 17, 2014) (finding that pain management guidelines published after defendant's treatment of plaintiff were not relevant).

More fundamentally, the Guide has little application to Defendants in this case. The Guide was developed for law enforcement executives and leaders. ECF No. 110-3, PageID.1330. It states that law enforcement executives and leaders are encouraged to use the Guide as a starting point for developing local policies, strategies, and tactics. *Id.* at PageID.1331. Thus, the purpose of the Guide is to "inform and supplement" the way law enforcement leaders think about the policing issues contained in the Guide. *Id.* at PageID.1332. However, the Guide cautions that "[t]he featured best and promising practices do not… replace the need for local decisions and local decision-making." *Id.* In other words, the Guide contains high-level suggestions for policy implementation. There is no guarantee that the Guide's suggestions would be appropriate or applicable to policing in Southfield, Michigan. Nor does Plaintiff have an expert to explain the Guide's appropriateness or applicability to *these* Defendants in *this* case.

Thus, introduction of this Guide could confuse the jury about the standards under which Defendants were, or should have been, operating on June 23, 2019— the date of Plaintiff's arrest. Without an expert, the jury will not have the tools to contextualize or understand the document's significance. Plaintiff's argument that if the Guide is misleading, then Defendant's expert Dr. Amey is misleading, is not well

taken. Defendants' expert was hired to provide an expert opinion on the actual events and police tactics that were used in this case. In contrast, the Guide's only relation to this case is that it discusses police practices at a high level. It was not even in existence when the events at issue transpired.

In addition, the Court will not take judicial notice of this Guide. Courts are permitted to "take judicial notice of public documents and government documents because their sources 'cannot reasonably be questioned.'" *Overall v. Ascension*, 23 F. Supp. 3d 816, 824–25 (E.D. Mich. 2014) (quoting Fed. R. Evid. 201(b)(2)). However, judicial notice cannot be used to flout evidentiary rules. *See Jones v. Prudential Sec., Inc.*, 534 F. Supp. 3d 839, 841 (E.D. Mich. 2021); *Am. Prairie Constr. Co. v. Hoich*, 560 F.3d 780, 797 (8th Cir. 2009) ("Caution must… be taken to avoid admitting evidence, through the use of judicial notice, in contravention of the relevancy, foundation, and hearsay rules."). The Court concludes that the Guide must be excluded under Federal Rule of Evidence 403 for being substantially more prejudicial and confusing than it is probative, so the Court declines to judicially notice it. Therefore, Defendants' Motion is GRANTED.

### f. Defendants' Fourth Motion in Limine: Plaintiff's Good Character

i.   <u>Parties' Arguments</u>

Defendants' fourth Motion in Limine requests the Court to preclude the introduction of evidence, argument, or comment about Plaintiff's "good character,

such as any recognition, awards, community involvement, or past popularity through his association with football teams[.]" ECF No. 111, PageID.1492. Plaintiff is a former football player for the University of Michigan and the Buffalo Bills, and Defendants contend that a juror may recognize him and improperly favor him for that reason. *Id.* at PageID.1493. Defendants argue that such information is irrelevant under Federal Rule of Evidence 402, unfairly prejudicial under Federal Rule of Evidence 403, and improper character evidence under Federal Rule of Evidence 404(a). *Id.*

Plaintiff responds that his general background information "directly relates to the amount of embarrassment" that he has experienced because of his arrest. ECF No. 132, PageID.1967. He states that being the victim of excessive force is "a far cry from once being known as a star football player." *Id.* Accordingly, Plaintiff asserts that this information is relevant and not impermissible character evidence.

ii.    <u>Analysis</u>

Under Rule 404(a) of the Federal Rules of Evidence, evidence of a person's character or character trait is inadmissible to prove that the person acted in accordance with the character or trait. Fed. R. Evid. 404(a)(1). The evidence is admissible for any other purpose. Here, Plaintiff has put forth a credible non-character purpose for references to his past career and background information: contextualizing his emotional injury and damages. As such, it is not improper

19

character evidence. Neither is such information irrelevant, because it helps to establish the garden-variety emotional distress damages that Plaintiff claims. *See* Fed. R. Evid. 401.

Moreover, the Court cannot conclude that basic background information about who Plaintiff is and where he came from would be more prejudicial than probative under Rule 403. Given that exclusions under Rule 403 should be used "sparingly," *Morris*, 79 F.3d at 412, and that Plaintiff's background is relevant to understanding and evaluating his claim for damages, Defendants' Motion is DENIED.

### g. Defendants' Fifth Motion in Limine: Challenging the Stop, Arrest, and Grounds for Removal

#### i. Parties' Arguments

Defendants' fifth Motion in Limine requests the Court to preclude Plaintiff from challenging the stop, arrest, and grounds for removal from his vehicle. ECF No. 112. Defendants note that Plaintiff has no claim challenging any aspect of his stop or arrest besides the force that Defendants used. *Id.* at PageID.1513. Defendants also note that Plaintiff pleaded guilty to resisting and obstructing arrest, so legal challenges to his stop and arrest are barred. *Id.* Thus, Defendants argue that Plaintiff should be foreclosed under Federal Rules of Evidence 402 and 403 from challenging the stop, arrest, and grounds for removing him from his vehicle, or even suggesting as such. *Id.* at PageID.1514.

20

Plaintiff responded in opposition. Plaintiff states that he does not plan to challenge the *legality* of the stop or arrest. ECF No. 135, PageID.2006. However, Plaintiff states that he plans to testify that he did not know that he had violated any laws at the time of his stop and arrest, and that he only pleaded guilty to take accountability for his actions after learning they were wrong. *Id.* Plaintiff argues that his lack of knowledge of the grounds for his stop and arrest goes to the reasonableness of force used under the circumstances. *Id.*

In reply, Defendants argue that Plaintiff's subjective belief that he did nothing wrong is irrelevant to the reasonableness of their use of force. ECF No. 147, PageID.2233.

### ii.   <u>Analysis</u>

Plaintiff does not challenge the *legality* of his stop, arrest, or the grounds for removal, so Defendants' Motion is GRANTED to this extent.

However, the Court will not prevent Plaintiff from testifying that he did not know why he was pulled over by Defendants. To be sure, the determination of whether an officer used excessive force in a police encounter is solely predicated on what the officer knew at the time of the encounter, not on the plaintiff's subjective understandings or motivations during the encounter. *See Wright v. City of Euclid, Ohio*, 962 F.3d 852, 868 (6th Cir. 2020); *Ashford v. Raby*, 951 F.3d 798, 802 (6th Cir. 2020). Nevertheless, "[e]vidence which is essentially background in nature can

21

scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding." Fed. R. Evid. 401 advisory committee's note. Indeed, "[e]vidence is relevant if it sets the scene, fills the gaps, or sheds light on the broader story. Relevance is not limited to the elements of the claim, or to disputed facts." *Pryor v. Corrigan*, No. 17-cv-1968, 2023 U.S. Dist. LEXIS 15122, at *11–*12 (N.D. Ill. Jan. 30, 2023); *see also United States v. Boros*, 668 F.3d 901, 908 (7th Cir. 2012) ("[O]ne measure of relevance is whether its exclusion would leave a chronological and conceptual void in the story." (citation omitted) (internal quotation marks omitted)).

Here, Plaintiff's lack of knowledge about why he was pulled over merely "fills the gaps" and "sheds light on the broader story" of Plaintiff's entire encounter with police on the day in question, setting the stage for the interaction between the parties and contextualizing why Plaintiff repeatedly asked Defendant Korkis why he was pulled over. *Pryor*, 2023 U.S. Dist. LEXIS 15122, at *11. Furthermore, the jury likely will expect Plaintiff to explain his side of the encounter. Preventing Plaintiff from doing so may work unnecessary and unwarranted prejudice to his case. Therefore, Defendants' Motion is DENIED to this extent.

### h. Defendants' Sixth Motion in Limine: References to Race

Defendants' sixth Motion in Limine requests the Court to preclude references to race at trial. *See* ECF No. 114. Defendants note that Plaintiff has frequently

invoked race during the pendency of this litigation, referring to the fact that Defendant Korkis called Plaintiff a "boy" during his arrest, and broadly discussing the "larger debate over interactions between law enforcement and the African American community." *Id.* at PageID.1553. Defendants argue that an officer's subjective motivations for the use of force is not relevant to the reasonableness of that use of force under *Graham v. Connor*, so references to Defendants' purported racial animus is not relevant. *Id.* at PageID.1554 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). To the extent race is relevant, Defendants argue its introduction in the case would be more prejudicial than probative. *Id.* at PageID.1556. Plaintiff did not respond to this Motion.

Although Plaintiff failed to respond to the Motion, the Court will not prohibit the jury from hearing, or Plaintiff mentioning, that Defendant Korkis called Plaintiff "boy." Because Defendant Korkis made this comment during the scuffle with Plaintiff, the Court concludes that this comment "sets the scene" and "sheds light on the broader story" of the events in question. *Pryor*, 2023 U.S. Dist. LEXIS 15122, at *11–*12; *see also Graham*, 490 U.S. at 386 (stating that analyzing the reasonableness of force "requires careful attention to the facts and circumstances of each particular case[.]"). Any prejudice resulting from the admission of this testimony will be mitigated by jury instructions which make clear that Defendants' subjective motivations are not pertinent to the analysis of reasonableness. As to any

other mentions of race, the Court will grant Defendants' Motion because Plaintiff failed to respond. *See Murray*, 763 F. Supp. 2d at 871–72. Therefore, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

### i.  Defendants' Seventh Motion in Limine: Certain Damages

Defendants' seventh Motion in Limine asks the Court to exclude evidence of Plaintiff's damages for medical treatment and physical injuries; exclude evidence of past or future wage loss; preclude Plaintiff from claiming past, present, or future emotional damages; and exclude evidence of damages to Plaintiff's cellphone. *See* ECF No. 114. Plaintiff responded, stating that he does not contest Defendants' request to preclude him from making an argument for past or future wage loss. ECF No. 134, PageID.1990. To that extent, Defendants' Motion is GRANTED. Plaintiff opposed Defendants' remaining arguments.

i.  <u>Medical Records, Photos, and Videos of Injuries</u>

Defendants' first contention is that evidence of Plaintiff's medical treatment and injuries resulting from his arrest[6] must be excluded. ECF No. 114, PageID.1574. After the Sixth Circuit's ruling that Defendants are entitled to qualified immunity for tasing Plaintiff, Defendants note that the sole issue remaining is whether they

---

[6] Plaintiff's injuries include abrasions to his forehead, knee, ankle, and elbow, and bruises on his shoulder, hip, and knee. *Id.* at PageID.1574.

used excessive force removing Plaintiff from the vehicle. ECF No. 114, PageID.1572. Defendants maintain that Plaintiff's physical injuries were not incurred during Plaintiff's removal from the vehicle; therefore, the medical records, photographs, and videos of these injuries are not relevant. ECF No. 114, PageID.1573, 1574–75. Plaintiff disputes this contention, stating that Defendants cannot identify when Plaintiff received the injuries he did, and that it is possible he sustained those injuries when he was removed from the vehicle and thrown to the ground. ECF No. 134, PageID.1991.

Defendants confuse which portion of the arrest is still at issue. When ruling on Plaintiff's excessive force claim, the Sixth Circuit divided the entire police encounter into two parts: Plaintiff's removal from the vehicle and Plaintiff's tasing. ECF No. 36, PageID.369. The Sixth Circuit granted Defendants qualified immunity on the tasing issue alone. *Id.* at PageID.373. Prior to the tasing, however, Defendants removed Plaintiff from the vehicle and forced Plaintiff to the ground. *Id.* at PageID.368. Defendant Korkis also laid on top of Plaintiff's body. *Id.* The Sixth Circuit did not address the propriety of the force used in this portion of the arrest. *Id.* at PageID.373. Therefore, the force Defendants used to grab Plaintiff out of the vehicle *and* to wrestle him to the ground is still in question here.

In his deposition, Plaintiff specifically stated that he believes he sustained his injuries when the officers forced him to the cement. *See* ECF No. 88-5, PageID.1132.

Plaintiff testified at length about the pain and injury Defendants caused *prior* to his tasing. *Id.* at PageID.1130–1132. In contrast, Defendants offer no reason to believe that Plaintiff could not have sustained his bruises and abrasions during this portion of his arrest. Thus, medical records and photographs of these injuries are relevant to Plaintiff's claimed damages. To this extent, Defendants' Motion is DENIED.

### ii.   Past, Present, or Future Emotional Damages

Defendants' second contention is that Plaintiff should be barred from bringing a claim for emotional distress damages because "the Court limited discovery" into Plaintiff's mental health history. ECF No. 114, PageID.1576. As a result, Defendants argue that allowing Plaintiff to claim emotional distress damages will prejudice them because Defendants were unable to fully discover if there are "other causes" to Plaintiff's emotional damages. *Id.* Plaintiff opposes this assertion, stating that he only seeks garden-variety emotional distress damages and that producing mental health records was not necessary in this case. ECF No. 134, PageID.1991–94.

Defendants' request to limit Plaintiff's emotional damages must be denied. As an initial matter, motions *in limine* are "designed to narrow the *evidentiary issues* for trial and to eliminate unnecessary trial interruptions," whereas summary judgment motions are "designed to eliminate a trial in cases where there are no *genuine issues of material fact*[.]" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013)

(emphasis added).  Considering non-evidentiary matters in a motion *in limine* may constitute reversible error. *Id.* at 566.

Courts have repeatedly held that issues pertaining to the scope or propriety of damages are substantive issues that are inappropriate for motions *in limine*. *See Caudle v. Nielsen Co. (US), LLC*, No. 17-13737, 2020 WL 8572402, at *3 (E.D. Mich. Dec. 28, 2020) (finding that a motion *in limine* "is the wrong vehicle to narrow the scope of damages."); *Pickens v. Dowdy*, No. 17-2205-tmp, 2018 U.S. Dist. LEXIS 219324, at *3 (W.D. Tenn. July 31, 2018) ("[T]o the extent that [defendant] is asserting that consideration of punitive damages would be inappropriate as a matter of law, the motion is procedurally improper."); *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, No. 2:06-cv-581, 2008 U.S. Dist. LEXIS 12307, at *12–*13 (S.D. Ohio Feb. 7, 2008) ("Defendants' request to exclude evidence of emotional damages is more a motion for judgment on the pleadings or for summary judgment… than it is a motion *in limine*. The time for filing such dispositive motions has long closed and Defendants cannot evade this Court's deadlines simply by captioning its dispositive motion in a creative manner."). Here, Defendants seek to eliminate Plaintiff's claim for emotional damages. At this stage, Defendants' request is procedurally improper; they should have raised the issue in their Motion for

27

Summary Judgment. Defendants' attempt to disguise this substantive issue as an evidentiary one is transparent.[7]

Furthermore, the Court has already explained to Defendants at length why Plaintiff's mental health records were unnecessary in this case. *See* ECF No. 79, PageID.987–88; ECF No. 89, PageID.1163. Plaintiff only claims "garden-variety" emotional distress damages for the emotional injury he received because of the alleged excessive force Defendants used against him. The Court has already found that Plaintiff's emotional distress damages are "garden-variety," that he did not open the door to broad discovery of his mental health, that Plaintiff did not need to disclose 15 years of mental health records per Defendants' discovery request, and that Defendants were not entitled to reconsideration of this issue. *See* ECF No. 79, PageID.987–88; ECF No. 89, PageID.1163.

Yet Defendants' current Motion asks the Court to *penalize* Plaintiff for not disclosing his mental health records even though the Court has *twice* held that

---

[7] Even if the Court were to consider Defendants' prejudice argument, it would still deny the request. Of course, any evidence of damages is prejudicial to Defendants; the question is whether that prejudice is *unfair* and whether the evidence's probative value is *substantially outweighed* by that prejudice. *See* Fed. R. Evid. 403. Defendants did not address how the prejudice they will suffer is greater than the probative value of Plaintiff's evidence of his emotional distress. Part of this omission is likely due to Defendants' awkward attempt to clothe this substantive issue as an evidentiary one: how can one analyze the probative value of Plaintiff's emotional distress evidence when Defendants are seeking to eliminate the emotional distress *claim* completely?

Plaintiff did not put his mental health history in issue and that he did not need to disclose his mental health records. For Defendants to bring this request before the Court despite the Court's clear and repeated position on the issue of Plaintiff's mental health records borders on contumacious.

Therefore, to this extent, Defendants' Motion is DENIED.

### iii.    Evidence of Phone Damages

Defendant's final contention is that evidence of Plaintiff's cell phone damages should be excluded because Plaintiff failed to provide a computation of his damages under Federal Rule of Civil Procedure 26(a)(1)(A)(iii). ECF No. 114, PageID.1577. In response, Plaintiff admitted that he did not disclose a computation of the phone's damages as required by Rule 26. ECF No. 134, PageID.1994. Plaintiff states that his failure to disclose this evidence is "harmless for reasons of the de minimis value of Plaintiff's cell phone." *Id.* at PageID.1995.

Rule 26 of the Federal Rules of Civil Procedure requires a party to provide a computation of each category of his damages and the evidence upon which each computation is based. Fed. R. Civ. P. 26(a)(1)(A)(iii). If a party fails to disclose such computation or evidence, the party may not use that information to supply evidence at trial unless the nondisclosure was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). To determine whether a failure to disclose is "substantially justified" or "harmless," the Sixth Circuit considers the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

Despite the Rule 37(c)(1)'s mandatory language, "appellate courts continue to insist that [exclusion] falls within the sound discretion of the trial court." *El Camino Res., Ltd. v. Huntington Nat'l Bank*, No. 1:07-cv-598, 2009 WL 1228680, at *6 (W.D. Mich Apr. 30, 2009) (citing *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)). District courts have "broad discretion" in applying the *Howe* factors and "need not apply each one rigidly." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citation omitted). The burden is on the non-moving party to show that its nondisclosure was substantially justified or harmless. *SPX Corp. v. Bartec USA, LLC*, 574 F. Supp. 2d 748, 757 (E.D. Mich. 2008).

Here, Plaintiff's sole reason for failing to provide a computation or evidence of his phone damages is that such evidence is "de minimis." ECF No. 134, PageID.1995. The Court does not doubt that the phone is of little relative value. Plaintiff, however, did not mention the *Howe* factors, explain what evidence he plans to introduce to prove his phone damages, or cite a single case to support his contention that de minimis damages need not be disclosed under Rule 26. The Court

30

is unable to determine whether Defendants would be surprised by the evidence or if they could cure that surprise; whether the evidence would disrupt trial; or whether that evidence is important for Plaintiff's claim of damages. *See Howe*, 801 F.3d at 748. The Court notes that it is Plaintiff's burden to prove his nondisclosure is substantially justified or harmless, and Plaintiff's one-sentence explanation does not do so.[8]

Therefore, to this extent, Defendants' Motion is GRANTED.

### j.  Defendants' Eighth Motion in Limine: Undisclosed Witnesses

Defendants' eighth Motion in Limine requests the Court to exclude witnesses that Plaintiff failed to disclose. *See* ECF No. 115. Defendants state that in his witness list, Plaintiff included unnamed members of the Southfield Fire Department, EMTs, City of Southfield staff, and medical personnel from Ascension Providence Hospital as potential witnesses in the case "as identified through discovery." *Id.* at PageID.1608. Plaintiff never disclosed these witnesses' names, in alleged violation of Federal Rule of Civil Procedure 26(a)(1)(A)(i). *Id.* Plaintiff did not respond to this Motion.

---

[8] In Defendants' Motion, they end their request by stating that the Court "should dismiss [Plaintiff's] claim for damages for his cell phone." ECF No. 114, PageID.1578. The Court once again cautions Defendants that excluding evidence of the phone damages is not the same as dismissing Plaintiff's claim for phone damages. *See Caudle*, 2020 WL 8572402, at *3.

Because Plaintiff failed to respond to this Motion, the Court assumes that Plaintiff does not oppose it. *Murray*, 763 F. Supp. 2d at 871–72. Therefore, Defendants' Motion is GRANTED.

### k. Defendants' Ninth Motion in Limine: Limit Arguments Based on Sixth Circuit Opinions

i.    <u>Parties' Arguments</u>

Defendants' ninth Motion in Limine asks the Court to limit arguments in this case based on what the Sixth Circuit has already ruled on interlocutory appeal. *See* ECF No. 116. Defendants note that the Sixth Circuit has ruled that they are entitled to qualified immunity as to their tasing of Plaintiff. *Id.* at PageID.1636. Defendants contend that any arguments addressing any portions of the police encounter after Plaintiff's removal from the vehicle would violate the law-of-the-case doctrine, and would be irrelevant and confuse the jury, "absent an instruction that Defendants' actions following removal were legal." *Id.* at PageID.1645.

In response, Plaintiff agrees that he will not make any argument that Defendants' tasing of Plaintiff, or any action after the tasing, constitutes excessive force. ECF No. 137, PageID.2050. However, Plaintiff opposes giving a limiting instruction, stating that it would be more prejudicial than probative because the time between the interaction in question (Plaintiff's removal) and the action that is not in question (Plaintiff's tasing) is so short. *Id.* at PageID.2050–51.

Defendants replied, stating that "the actions of the Defendants once Plaintiff is outside of his vehicle and his feet are on the ground are not legally contestable" and that the "jury ought to know that." ECF No. 145, PageID.2206–07.

## ii.    Analysis

The law-of-the-case doctrine prevents a court from reconsidering issues that were decided at an earlier stage of the case. *See Moody v. Mich. Gaming Control Bd.*, 871 F.3d 420, 425 (6th Cir. 2017); *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016). "Application of this doctrine is 'limited to those questions necessarily decided in the earlier appeal.'" *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1071 (6th Cir. 2014) (quoting *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997)). "Necessarily decided" means all issues that were "'fully briefed and squarely decided' in an earlier appeal." *Id.* (quoting *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 91 Fed. App'x 370, 374 (6th Cir. 2004)).

As an initial matter, the Court clarifies that the use of force *prior to* the tasing is still in issue in this case. The Sixth Circuit held that Defendants were entitled to qualified immunity for the tasing, but it did not "squarely decide[]" that Defendants were entitled to qualified immunity for any other aspect of Plaintiff's excessive force claim. *Vander Boegh*, 772 F.3d at 1071; *see* ECF No. 36, PageID.373. Other aspects of force include not only removing Plaintiff from the vehicle, but also wrestling him to the ground and laying on top of him, which all occurred prior to the tasing.

33

Plaintiff agrees that the tasing, as well as any force after the tasing, is no longer in issue; therefore, he agrees not to raise any argument or suggestion about the excessiveness of such force at trial. To that extent, Defendants' Motion is GRANTED. To the extent Defendants seek to preclude Plaintiff from discussing any portion of the force that occurred prior to the tasing, Defendants' Motion is DENIED, because that force is still in issue.

Moreover, to the extent it is necessary, the Court will give a limiting instruction that the tasing is not in issue and that the jury shall not consider the tasing or anything after the tasing when reaching its verdict.[9] The necessity of the limiting instruction will depend on whether the entire dashcam video—including the tasing—is shown to the jury. The Court instructs counsel for the parties to confer prior to trial and come to an agreement if possible about whether they will show the whole video to the jury or whether they will show only the portions of the video prior to the tasing.

---

[9] The Court will not instruct the jury that the force used was "lawful." The Sixth Circuit did not hold that Defendants' use of force was lawful. It resolved the qualified immunity issue by holding that Plaintiff's right not to be tased under the circumstances was not clearly established—whether that right actually existed or not. *See* ECF No. 36, PageID.371.

### l.  Defendants' Tenth Motion in Limine: References to Abuse

Defendants' tenth Motion in Limine requests the Court to preclude any references to abuse that Plaintiff suffered at the hands of Dr. Robert Anderson, a former University of Michigan doctor who had sexually abused his patients. ECF No. 122; *see* ECF No. 88-5, PageID.1126–27. Defendants argue that such information is not relevant and that there is a danger of unfair prejudice if it is admitted. ECF No. 122, PageID.1709. Plaintiff did not respond to the Motion.

Because Plaintiff failed to respond to this Motion, the Court assumes that Plaintiff does not oppose it. *Murray*, 763 F. Supp. 2d at 871–72. Therefore, Defendants' Motion is GRANTED.

### m. Defendants' Eleventh Motion in Limine: References to the City of Southfield's Self-Insurance or Collective Bargaining Agreement

#### i.  Parties' Arguments

Defendants' eleventh Motion in Limine requests the Court to exclude references to the City of Southfield's self-insurance or collective bargaining agreement under Federal Rules of Evidence 411, 401, or 403. *See* ECF No. 123. Defendants disclosed to Plaintiff that Defendants are covered by the City of Southfield's self-insurance program. According to Defendants, Plaintiff never sought discovery of the City's self-insurance documents or its collective bargaining agreement with the police department. ECF No. 123, PageID.1720. Yet Plaintiff now

35

indicates that he intends to inquire about the City's self-insurance at trial, and possibly introduce the City's old collective bargaining agreement with its police force—which expired in 2017—for the purpose of demonstrating that Defendants have the ability to pay punitive damages. *Id.* at PageID.1727. Defendants contend that any reference to its self-insurance or collective bargaining agreement should not be allowed.

Plaintiff responded in opposition. Plaintiff appears to agree that he cannot introduce evidence of the self-insurance unless Defendants open the door by presenting evidence about their ability to pay punitive damages. *See* ECF No. 133, PageID.1980. However, Plaintiff states that he should be permitted to introduce the evidence if Defendants open that door. *Id.*

In reply, Defendants agree that Plaintiff can reference the City's self-insurance or collective bargaining agreement if Defendants "raise the issue of their inability to pay." ECF No. 143, PageID.2185.

ii.   <u>Analysis</u>

Federal Rule of Evidence 411 states that insurance evidence "is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose[.]" Fed. R. Evid. 411. It is well settled that the "voluntary or intentional introduction into evidence, either directly or indirectly, by the plaintiff of the fact that a defendant… is protected by liability

36

insurance, is prejudicial error and grounds for a mistrial[.]" *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 758 (6th Cir. 1980) (quoting *Gleaton v. Green*, 156 F.2d 459, 461 (4th Cir. 1946)).

In the context of punitive damages, defendants are permitted to introduce evidence of their ability to pay such damages. *See Johnson*, 24 Fed. App'x at 488; *Sullivan v. Detroit Police Dep't*, No. 08-CV-12731, 2009 U.S. Dist. LEXIS 50962, at *7 (E.D. Mich. June 17, 2009) ("A Defendant's financial status may generally be considered by a jury in determining a level of punitive damages if such are potentially due[.]"). If defendants testify about their inability to pay punitive damages, they "open[] the door" to the plaintiff rebutting such testimony with proof of indemnification. *See Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998).

Here, Plaintiff and Defendants appear to agree that Plaintiff cannot reference the City's self-insurance or collective bargaining agreement unless Defendants open the door by testifying that they are unable to pay punitive damages. Thus, this Motion is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART. Plaintiff cannot reference the self-insurance or collective bargaining agreement unless Defendants open the door to it. If Defendants raise the issue of inability to

pay at trial and Plaintiff seeks to rebut it with evidence of indemnification, the Court

will entertain other objections to the evidence at that time.[10]

### n. Defendants' Twelfth Motion in Limine: Improper Force Analysis Topics

i.     <u>Parties' Arguments</u>

Defendant's twelfth and final Motion in Limine requests the Court to limit

"improper areas of testimony, argument, and suggestion for trial." ECF No. 124,

PageID.1744. Specifically, Defendants contend that the Court should prohibit

Plaintiff from making any inquiry into alternative use of force tactics or techniques,

any suggestion that Defendants' "bad tactics" led to the use of force, and any

argument that Defendants were required to use the least intrusive force possible.

Defendants argue that Supreme Court and Sixth Circuit case law preclude such

inquiries, rendering them irrelevant or more prejudicial than probative under Federal

Rules of Evidence 402 and 403.

In response, Plaintiff states that the existence of alternative tactics is relevant

to the jury's determination of whether Defendants' methods of force were reasonable

---

[10] For instance, the Court cannot see how the expired collective bargaining agreement that Plaintiff allegedly seeks to introduce to demonstrate indemnification will be relevant, given that it was expired when the events at issue occurred. Plaintiff did not provide the Court with a copy of this agreement, nor did he explain how he would use it. The Court will address this issue at trial if it comes up.

under the excessive force standard delineated in *Graham v. Connor*.[11] ECF No. 129, PageID.1901–02. Plaintiff appears to concede that arguments that Defendants should have used the least intrusive means of force available are improper under Fourth Amendment excessive force case law. *Id.* at PageID.1902. Plaintiff did not address Defendants' contention that he should not be permitted to argue that Defendants' "bad tactics" led to the use of excessive force.

ii.   Analysis

Under the Supreme Court's *Graham v. Connor* decision, the reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." 490 U.S. at 396 (citation omitted). The "calculus of reasonableness" must allow for the fact that police officers often make "split-second judgments" in "tense, uncertain, and rapidly evolving" circumstances about the use of force that is necessary. *Id.* at 396–97. Varying degrees of force may be within the realm of "reasonable" under a particular

---

[11] Plaintiff cited the following factors as the test for whether force is excessive under the Fourth Amendment: (1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; (3) the extent of the injury inflicted; and (4) whether the force was applied in a good faith effort to maintain and restore discipline, or maliciously and sadistically for the very purpose of causing harm. *Graham*, 490 U.S. at 390, 397 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). In fact, the Supreme Court's *Graham* decision expressly *invalidates* this test and supplies the correct test that courts use today. *Id.* at 396–98. Plaintiff's apparent unfamiliarity with the Supreme Court's seminal *Graham* decision—and the standards that apply to his sole claim for excessive force—is unsettling.

set of circumstances. As long as an officer's response is within that range, he has not violated the Fourth Amendment. *See Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005) (stating that officers "need only act within th[e] range of conduct we identify as reasonable." (citation omitted)).

Accordingly, it is well-settled in the Sixth Circuit that in a Fourth Amendment excessive force case, it is improper to consider whether officers used the "best" or least intrusive force available under the circumstances. *See Davenport v. Causey*, 521 F.3d 544, 552 (6th Cir. 2008); *Lyons*, 417 F.3d at 576; *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 775 (6th Cir. 2004); *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (6th Cir. 1996). In addition, the Sixth Circuit has instructed courts not to consider whether police conduct created the need for the use of force, noting that the focus must be on the seizure at issue, the force used to effect that seizure, and the "split-second judgments" made immediately prior to the use of force. *See Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 406–07 (6th Cir. 2007) (citing *Dickerson*, 101 F.3d at 1161).

Considering these precedents, the Court must grant Defendants' request to exclude any testimony, argument, or suggestion that Defendants should have used the least intrusive force or the "best" techniques available to restrain Plaintiff, or that Defendants caused or contributed to the need to use force under the circumstances. These inquiries lack any legal relevance under the governing standards of excessive

force in the Sixth Circuit. Therefore, Defendants' Motion is GRANTED to this extent.

At this time, however, the Court will not grant Defendants' request to exclude any suggestion *whatsoever* that Defendants had alternative tactics available during the arrest of Plaintiff. In some instances, the mention of alternative uses of force or generally accepted police policies or practices may help the jury determine the reasonableness of the force used under the circumstances.[12]  *See, e.g.*, *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908–09 (6th Cir. 2004) (permitting testimony about police practices regarding the use of force); *Alvarado v. Oakland Cnty.*, 809 F. Supp. 2d 680, 690 (E.D. Mich. 2011) (permitting expert testimony about what other uses of force would have been authorized under the circumstances); *United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017) (stating that the governing standard for excessive force claims contemplates evaluating the facts from the perspective of a "reasonable *officer*, not a reasonable person, so it may be useful in a particular case to know how officers typically act in like cases."). Thus, it cannot be said that evidence of general, universally accepted police tactics "will *never* be

---

[12] To be sure, as Defendants point out, the Sixth Circuit has once stated that "whether or not the officer had other means of force at his disposal[]" is "irrelevant." *Davenport*, 521 F.3d at 552. Looking at that statement in context, however, the Sixth Circuit was referencing how "best technique available" arguments are forbidden. *Id.* (collecting cases).

relevant to the objective-reasonableness inquiry."[13] *Brown*, 871 F.3d at 537 (emphasis in original).

Of course, there are many ways a jury can misuse "alternative tactic" evidence. *See, e.g.*, *Davenport*, 521 F.3d at 552 (impermissible for jury to find excessive force merely because there was a less forceful means available); *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) (impermissible for jury to find excessive force merely because an officer violated local use-of-force policies); *Coitrone v. Murray*, No. 1:13-CV-00132-GNS-HBB, 2015 U.S. Dist. LEXIS 64998, at *13 (W.D. Ky. May 19, 2015) (citing *Davis v. Scherer*, 468 U.S. 183, 193–96 (1984)) (same). Without the context of trial, however, the Court cannot know whether the alternative tactics inquiry will be more prejudicial than probative, or even if Plaintiff can lay the foundation to such inquiry. The Court will entertain objections to this issue at trial. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846. Therefore, Defendants' Motion is DENIED WITHOUT PREJUDICE to this extent.

---

[13]In addition, the Sixth Circuit permits courts to consider whether de-escalation tactics were available instead of force, at least where the person who was harmed by the use of force has a mental illness. *See, e.g.*, *Palma v. Johns*, 27 F.4th 419, 438 (6th Cir. 2022).

### o. Plaintiff's First Motion in Limine: Driving Record and Warrants

#### i.    Parties' Arguments

Plaintiff's first Motion in Limine requests the Court to exclude as evidence his driving records and warrants. *See* ECF No. 117. Plaintiff asserts that such evidence is irrelevant, or at the least more prejudicial than probative, because Defendants had no knowledge of Plaintiff's driving records or warrants at the time of the stop. *Id.* at PageID.1654–58. In addition, Plaintiff contends that this evidence is impermissible character evidence. *Id.* at PageID.1655. Plaintiff also points out that Defendants have police officers from Farmington Hills—who had stopped Plaintiff's vehicle a year prior to the events in this action—on their witness list, and he argues that they should be excluded as witnesses for these same reasons. *Id.* at PageID.1658.

Defendants responded in opposition. *See* ECF No. 128. Defendants claim that "[u]nderstanding why Plaintiff chose to resist… is directly relevant to evaluating the totality of the circumstances that the officers faced" even though Defendants had no knowledge of Plaintiff's driving record or warrants. *Id.* at PageID.1834. In addition, Defendants assert that the evidence is not impermissible character evidence because it demonstrates Plaintiff's "motive or intent." *Id.* at PageID.1835. Defendants also argue that such evidence is relevant to Plaintiff's damages, because Plaintiff's prior experiences with police may discredit his claims of fear, humiliation, and other

43

psychological damages he suffered because of the events in question. *Id.* at PageID.1837. Finally, Defendants contend that this evidence is necessary to rebut Plaintiff's claim that he did not know why he was pulled over, and that their Farmington Hills police witnesses are only impeachment witnesses for the same purpose. ECF No. 128, PageID.1833.

ii.    <u>Analysis</u>

When determining whether an officer's use of force is reasonable, a court must consider "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them[.]" *Graham*, 490 U.S. at 397 (citations omitted). As such, "[t]he reasonableness of force is predicated *solely* on the knowledge of officers in the moments before the force is used." *Wright*, 962 F.3d at 868 (emphasis added). In addition, the suspect's subjective intent and motivations are not relevant to this analysis. *See Ashford*, 951 F.3d at 802 ("[W]e must consider what was reasonable from the *officer's* perspective, not the suspect's."); *Jackson v. City of Gahanna*, No. C2:08-CV-0068, 2011 WL 587283, at *4 (S.D. Ohio Feb. 9, 2011); *Bygum v. City of Montgomery*, No. 2:19-cv-00456, 2021 WL 4487610, at *7 (S.D.W. Va. Sept. 30, 2021) ("[M]atters preceding the use of force and outside the knowledge of the officer are irrelevant to excessive force claims."); *Estate of Melvin v. City of Colo. Springs, Colo.*, No. 20-cv-00991-CMA-MDB, 2025 WL 761454, at

*4 (D. Colo. Mar. 11, 2025) (collecting cases holding that matters outside the knowledge of the officers are irrelevant to the excessive force analysis).

### a.  The Evidence Is Irrelevant to Prove the Reasonableness of Force

The Court concludes that this evidence is irrelevant to prove the reasonableness of force used under the circumstances. It is undisputed that Defendants did not know Plaintiff's driving record or that he had warrants out for his arrest before they used force against him. Thus, Plaintiff's warrants and driving record had nothing to do with Defendants' calculus of the need for the use of force and have no bearing on the reasonableness of force used.[14] *See Graham*, 490 U.S. at 396 (reasonableness "must be judged from the perspective of a reasonable officer *on the scene*, rather than with the *20/20 vision of hindsight*." (emphasis added)); *Wright*, 962 F.3d at 868. To consider matters unknown to Defendants would flout the Sixth Circuit's consistent position that in evaluating claims for excessive force, the focus is on officers' *split-second judgments* immediately preceding the use of force.

---

[14] Defendants assert that Plaintiff's guilty plea after this encounter for resisting and obstructing officers makes his driving record and warrants "particularly relevant." ECF No. 128, PageID.1836. Defendants argue that Plaintiff's driving record and warrants "provide[] essential context for understanding [Plaintiff's] admission of guilt[]" because they demonstrate that Plaintiff "knowingly resisted the officers[.]" *Id.* at PageID.1836–37. However, this reasoning merely circles back on the irrelevant consideration of Plaintiff's motivations for doing what he did. The jury need not see Plaintiff's driving records or warrants to evaluate Defendants' use of force based on the information Defendants knew at the time.

*Livermore ex rel. Rohm*, 476 F.3d at 407; *Dickerson*, 101 F.3d at 1161–62. Post hoc justifications for the use of force simply do not come into the analysis.[15] Moreover, such evidence is inadmissible character evidence because introducing it to demonstrate Plaintiff's "motive" is irrelevant to the reasonableness of force.

Therefore, Plaintiff's Motion is GRANTED to the extent that Defendants seek to use this evidence to prove the reasonableness of force.

---

[15] One unpublished Sixth Circuit case from 1997 found that it was not an abuse of discretion to admit evidence of the plaintiff's *subsequent* convictions for the conduct for which the defendants arrested him. *See Greene v. Distelhorst*, 116 F.3d 1480 (6th Cir. June 23, 1997) (table). The Sixth Circuit justified the evidence because it was relevant to the plaintiff's "motive to flee and resist arrest" and the officers' "motive to maintain pursuit." *Id.* at *3. Not only is this justification at odds with more recent published Sixth Circuit authority, but the facts in *Greene* are also distinguishable from those here. The defendants in that case suspected the plaintiff of drug dealing at the time they used force against him, and the plaintiff was subsequently convicted of drug dealing. *Id.* at *1. Here, Defendants did not suspect that Plaintiff had a warrant out for his arrest or that his license was expired; rather, they suspected that his car might be stolen. ECF No. 77-5, PageID.931. Thus, Plaintiff's warrants and driving history have no relation to the use of force analysis in this case—not even to bolster the reasonableness of Defendants' suspicions (and therefore the reasonableness of force) at the time. Moreover, the evidence at issue in *Greene* was the plaintiff's subsequent convictions for the same conduct that spurred the defendants' use of force. *Id.* at *2. In this case, Defendants seek to introduce evidence of *unrelated* prior infractions and warrants.

### b. The Evidence is More Prejudicial Than Probative of Damages and Plaintiff's Credibility

To the extent that Plaintiff's driving history or warrants have any relevance to damages or Plaintiff's credibility, the Court concludes that the prejudicial effect of such evidence outweighs its probative value.

As to damages, Defendants suggest that Plaintiff's driving record and warrants are relevant to show that Plaintiff may not be as emotionally damaged from this interaction with police as he claims, because he has had encounters with police before. *See* ECF No. 128, PageID.1837. However, there is a significant difference between merely interacting with police and being subjected to alleged excessive force. Plaintiff's prior encounters with police—particularly given that there is no evidence that officers used any meaningful force against Plaintiff in those circumstances[16]—have a tenuous relationship, if any, to Plaintiff's emotional damages resulting from the force used in this case. In contrast, the evidence is highly prejudicial because the jury may be "lure[d]" into an impermissible line of reasoning that the force used against Plaintiff was reasonable because he has interacted with police under similar circumstances, even though Defendants had no knowledge of

---

[16] *See, e.g.*, ECF No. 128-2, PageID.1845 (Farmington Hills police report stating that Plaintiff was merely "placed into handcuffs.").

these prior interactions at the time they used force against Plaintiff. *United States v. Asher*, 910 F.3d 854, 862 (6th Cir. 2018).

As to credibility, this evidence has some relevance because it suggests Plaintiff's claim that he did not know why he was pulled over may be untrue. Despite this relevance, the Court notes that Plaintiff's claim that he did not know why he was pulled over plays no role in this case other than to provide background context that sets the stage for the police interaction at issue. Rebutting this testimony with evidence of Plaintiff's driving record and warrants would be disproportionate and would "require dedicating unwarranted time and attention" to Plaintiff's unrelated prior acts. *United States v. Hankinson*, No. 3:22-cr-84-RGJ, 2024 WL 4626083, at *3 (W.D. Ky. Oct. 30, 2024). Moreover, introducing such evidence "creates the risk of spawning a series of 'mini-trials,' as [Plaintiff] will likely feel compelled to present [his] views as to what happened on those other occasions." *Id.* (quoting *United States v. Zastrow*, No. 23-CR-20100, 2024 WL 3498772, at *3 (E.D. Mich. July 22, 2024)). Ultimately, the Court concludes that the evidence would be unduly prejudicial and confuse the issues for the jury, and that these risks outweigh the value of attacking Plaintiff's credibility with this evidence.[17]

---

[17] The Court also notes that Defendants have a means to attack Plaintiff's credibility on this issue other than introducing these exhibits—namely, by cross examining him about the same thing. *See Old Chief v. United States*, 519 U.S. 172, 182 (1997) (holding that the Rule 403 balancing test should take into account available substitutes for the evidence in question).

Therefore, Plaintiff's Motion is GRANTED to the extent Defendants seek to use this evidence to prove damages or to attack Plaintiff's credibility.

### c. The Farmington Hills Police Impeachment Witnesses

Finally, as for the Farmington Hills Police impeachment witnesses, the Court cannot predict what Plaintiff will testify at trial or how these witnesses would be able to directly rebut any of Plaintiff's testimony. If Plaintiff says something objectively untrue about an issue that the Farmington Hills Police witnesses can directly rebut, the Court will rule on whether these witnesses should be precluded at that time. Therefore, Plaintiff's Motion is DENIED WITHOUT PREJUDICE to the extent that Defendants seek to impeach Plaintiff's testimony with the Farmington Hills Police impeachment witnesses.

### p. Plaintiff's Second Motion in Limine: Expert Report and Testimony of Dr. Steven Amey

#### i. Parties' Arguments

Plaintiff's second Motion in Limine requests the Court to exclude or limit the expert report and testimony of Dr. Steven Amey, whom Defendants intend to call as an expert witness at trial. *See* ECF No. 118. Plaintiff claims that Dr. Amey's opinion offers a legal conclusion that Defendants did not use excessive force. *Id.* at PageID.1670. Plaintiff also claims that Dr. Amey's testimony will not be reliable because he assumes that Plaintiff initiated contact with Defendant Korkis through

49

his car window, whereas the Sixth Circuit has already determined that the video footage is unclear about "who started it." *Id.*; *see* ECF No. 98, PageID.1236. Finally, Plaintiff asserts that Dr. Amey's testimony, which "frame[s]" Defendants' side of the story as "factually established," is more prejudicial than probative. ECF No. 118, PageID.1670.

Defendants responded in opposition. Defendants note that they told Plaintiff that Dr. Amey's opinion will not give a legal conclusion, and that they would stipulate to striking any legal conclusions from his report and testimony. ECF No. 138, PageID.2053–54. Plaintiff allegedly never contacted Defendants with a stipulated order nor identified which portions of the report he believes embrace a legal conclusion. *Id.* at PageID.2054, 2062. Defendants state that Dr. Amey will not offer legal conclusions at trial and that his opinions are proper. *Id.* at PageID.2067. Defendants further argue that Dr. Amey's observations of the video footage are still reliable, even though the contact between Plaintiff and Defendant Korkis was not clear to the Sixth Circuit, because "[h]is eyes are far more attuned than the average witness" due to his experience in the field. *Id.* Finally, Defendants argue that Dr. Amey's opinions will "not prejudice Plaintiff." *Id.* at PageID.2071.

ii.   <u>Analysis</u>

Federal Rule of Evidence 702 permits a witness who is qualified as an expert to testify in the form of an opinion if (1) his knowledge will help the trier of fact

understand the evidence or determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert's opinion is a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702. An expert may base his opinion on sources upon which experts in his field "reasonably rely," even if those sources would not be admissible as evidence. Fed. R. Evid. 703.

Furthermore, an expert's opinion may embrace the "ultimate issue" in a case. Fed. R. Evid. 704(a). Embracing the ultimate issue means "stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue." *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). On the other hand, the issue embraced "must be a factual one." *Id.* Offering legal conclusions or attempting to define legal terms is inappropriate for an expert witness. *See id.* "In sum, the expert's opinion must stop short of embracing the 'legal terminology' which frames the ultimate legal conclusion which the jury must reach in the case." *Alvarado*, 809 F. Supp. 2d at 688 (citation omitted).

Plaintiff's first contention is that Dr. Amey's opinion and expert report offers a legal conclusion that the use of force was not excessive. ECF No. 118, PageID.1668. Unfortunately, Plaintiff did not explain the basis for believing Dr. Amey's opinion offers a legal conclusion. Dr. Amey's report discusses the laws

Plaintiff was breaking when refusing to identify himself or provide documentation as requested; the specific training that officers receive to handle situations like the one involving Plaintiff; and the risks that Defendants would have faced had they permitted Plaintiff to come out of the car on his own.[18] *See* ECF No. 138-4. In excessive force cases, these are permissible expert inquiries that merely embrace the ultimate issue and do not offer a legal conclusion. *See, e.g.*, *Alvarado*, 809 F. Supp. 2d at 690; *United States v. Eberle*, No. 08-20139, 2008 WL 4858438, at *3 (E.D. Mich. Nov. 10, 2008). Therefore, the Court will not exclude or limit Dr. Amey's opinion. Plaintiff may object contemporaneously if Dr. Amey testifies as to a legal conclusion at trial.

Plaintiff also contends that Dr. Amey's opinion is not reliable because he assumes that Plaintiff is the one who initiated the first contact with Defendant Korkis—something that the Sixth Circuit stated is not clearly visible on the video footage. However, Dr. Amey did not make an assumption about first contact based on the video footage; rather, his expert report clearly states that he received this information from the police report. *See* ECF No. 138-4. Regardless, a use-of-force expert may express an opinion which is based on crediting, in a hypothetical sense,

---

[18] There is one line in the expert report where Dr. Amey arguably states a legal conclusion: "The level of force used never exceeds excessive from the drivers' own actions." ECF No. 138-4, PageID.2092. Unless and until Defendants seek to introduce the expert report as evidence, however, it is premature for the Court to rule on whether that sentence must be redacted.

the testimony of one side of the dispute. *See Champion*, 380 F.3d at 908 (finding an expert's opinion admissible where his opinion was "that if the witnesses' testimony is credited, the Officers' actions violated nationally recognized police standards governing excessive force."). The Court will ensure that the jury is instructed that the factual dispute—whether Plaintiff or Defendant Korkis initiated the physical altercation—is in its hands.

Finally, Plaintiff contends that the introduction of Dr. Amey's opinion will be more prejudicial than probative because his testimony will be "framed as if Korkis' side of the story has been factually established[.]" ECF No. 118, PageID.1670. If Dr. Amey frames his testimony as if Defendants' position is factually established, Plaintiff has tools at his disposal to counteract the prejudice—namely, objecting to the misrepresentations contemporaneously and cross examining the witness to expose those flaws. Moreover, the Court will ensure that the jury is fully aware that determining the factual dispute between the parties is its obligation. On the other hand, Dr. Amey's opinion has substantial probative value because it informs the jury about the training that officers receive for handling like situations, as well as the risks officers encounter when dealing with like situations, which goes to the reasonableness of force used under the circumstances. *See Alvarado*, 809 F. Supp. 2d at 690; *Eberle*, 2008 WL 4858438, at *3. The Court cannot conclude at this

juncture that Dr. Amey's testimony will be substantially more prejudicial than probative.

Therefore, Plaintiff's Motion is DENIED WITHOUT PREJUDICE.

### q. Plaintiff's Third Motion in Limine: Evidence that Plaintiff Knew Why He Was Stopped

Plaintiff's Third Motion in Limine requests the Court to exclude any information or argument suggesting that Plaintiff knew why he was stopped by Defendants. *See* ECF No. 119. Defendants responded in opposition. *See* ECF No. 127, PageID.1775. Plaintiff and Defendants raised the same arguments that they raised in their briefing on Plaintiff's First Motion in Limine: Plaintiff argues that the information is irrelevant because Defendants did not know about Plaintiff's driving records or warrants at the time of his arrest, and Defendants argue that this information is relevant for understanding the circumstances that Defendants faced, for proving damages, and for attacking Plaintiff's credibility.

The Court has already resolved these matters pursuant to Plaintiff's First Motion in Limine. As discussed, Defendants will not be permitted to argue that Plaintiff's knowledge of why he was stopped proves the reasonableness of force or rebuts Plaintiff's claim for damages. However, Defendants will be permitted to cross-examine Plaintiff about his driving history or warrants, for the sole purpose of challenging Plaintiff's credibility, only if Plaintiff opens the door by testifying that

he did not know why he was stopped. Therefore, Plaintiff's Motion is GRANTED

IN PART and DENIED IN PART.

### r.  Plaintiff's Fourth Motion in Limine: Transport to Police Department and Time Spent in Booking

Plaintiff's fourth Motion in Limine requests the Court to exclude any evidence

pertaining to Plaintiff's transport to, or time spent in, Southfield Police Department's

booking and jail. ECF No. 120, PageID.1692. Plaintiff argues that such evidence is

not relevant because it arises after the alleged excessive force occurred, and that the

introduction of such evidence will be more prejudicial than probative and will

confuse the issues in the case. *Id.* at PageID.1694.

Defendants responded, contending that such evidence is relevant to

demonstrate the force used against Plaintiff and to Plaintiff's claimed damages. ECF

No. 139, PageID.2142. Defendants state that the audio and video footage of Plaintiff

being transported to and booked at the jail show Plaintiff conversing, sitting,

standing, and walking with no apparent distress. *Id.* at PageID.2143–45. Defendants

argue that Plaintiff's condition is relevant to the credibility of his claim about the

amount of force used against him during the police encounter. *Id.* at PageID.2146–

47. Defendants also argue that the evidence is relevant to demonstrate the severity

of his physical and emotional injuries that make up his claimed damages. *Id.* at

PageID.2147.

The Court agrees with Defendants that the video evidence is relevant for the purposes they raised in their response because it goes to the credibility of Plaintiff's claimed damages. The Court is not persuaded that introduction of such evidence for Defendants' stated purposes will confuse the jury. Therefore, Plaintiff's Motion is DENIED to the extent that he seeks to exclude video. However, the Court does not know what can be heard in the corresponding audio to the video. Without knowing what can be heard in the audio, the Court cannot determine whether such audio should be admitted. Therefore, Plaintiff's Motion is DENIED WITHOUT PREJUDICE to the extent he seeks to exclude audio.

### s.  Plaintiff's Fifth Motion in Limine: Evidence of Ability to Pay Punitive Damages

#### i.    Parties' Arguments

Plaintiff's fifth and final Motion in Limine asks the Court to preclude Defendants from testifying about their ability to pay punitive damages. *See* ECF No. 125. Plaintiff notes that Defendants admitted in their initial disclosures that the City of Southfield has a self-insurance program and that Defendants are covered by it. *Id.* at PageID.1757. Plaintiff argues that Defendants' ability to pay punitive damages is therefore irrelevant and prejudicial, and any testimony otherwise would "constitute a perjury and perpetration of a fraud upon the court[.]" *Id.* at PageID.1758.

Defendants oppose Plaintiff's Motion. *See* ECF No. 136. They argue that under Sixth Circuit law, defendants have the burden of introducing evidence related

to their ability to pay punitive damages. ECF No. 136, PageID.2017. Defendants state that it would be unfair to preclude them from presenting such evidence, particularly because Plaintiff failed to conduct any discovery on this issue and does not know to what extent Defendants may be covered. *Id.* at PageID.2018. Defendants also note that under Michigan law, a government entity *may* indemnify an officer against whom a civil judgment was rendered. *See* Mich. Comp. Laws § 691.1408(1). Thus, the City has an option, but not a requirement, to indemnify Defendants. ECF No. 136, PageID.2019. Accordingly, Defendants argue that they should be permitted to introduce evidence of their ability to pay.

ii.     Analysis

A defendant's "financial status may generally be considered by a jury in determining a level of punitive damages if such are potentially due[.]" *Sullivan*, 2009 U.S. Dist. LEXIS 50962, at *7. Presenting "ability to pay" evidence is the defendant's burden. *Johnson*, 24 Fed. App'x at 488. If such evidence is not presented and the jury renders a large punitive damages award, the defendant "may not… be heard to complain that the jury did not consider" his ability to pay when fashioning the award. *Id.*

The Court will not prohibit Defendants from presenting their ability to pay damages, particularly where Plaintiff has not demonstrated that the City of Southfield is required to fully indemnify them. If Defendants "open the door" to this

inquiry, Plaintiff is permitted to elicit testimony and potentially introduce evidence about the City's self-insurance policy and Defendants' coverage under that policy. *See Lawson*, 153 F.3d at 379. Therefore, Plaintiff's Motion is DENIED.

## IV.   CONCLUSION

For the foregoing reasons, the Court holds that:

1. Defendants' First Motion in Limine [ECF No. 108] is **GRANTED IN PART AND DENIED IN PART.** Specifically:

   a. Defendants' request to preclude "Golden Rule" arguments is GRANTED;

   b. Defendants' request to preclude "Send a Message" arguments is DENIED because Plaintiff is permitted to make such arguments in reference to punitive damages; and

   c. Defendants' request to exclude references to unrelated instances of police brutality or uses of force is GRANTED;

2. Defendants' Second Motion in Limine [ECF No. 109] is **GRANTED;**

3. Defendants' Third Motion in Limine [ECF No. 110] is **GRANTED;**

4. Defendants' Fourth Motion in Limine [ECF No. 111] is **DENIED;**

5. Defendants' Fifth Motion in Limine [ECF No. 112] is **GRANTED IN PART AND DENIED IN PART.** Specifically:

a. Defendants' request to preclude Plaintiff from challenging the legality of his stop is GRANTED; and

b. Defendants' request to preclude Plaintiff from stating that he did not know why he was pulled over is DENIED;

6. Defendants' Sixth Motion in Limine [ECF No. 113] is **GRANTED IN PART AND DENIED IN PART.** Specifically:

a. Defendants' request to exclude Defendant Korkis's comment calling Plaintiff "boy" is DENIED; and

b. Defendants' request to exclude all other references to race is GRANTED;

7. Defendants' Seventh Motion in Limine [ECF No. 114] is **GRANTED IN PART AND DENIED IN PART.** Specifically:

a. Defendants' request to exclude Plaintiff's claim for past or future wage loss is GRANTED;

b. Defendants' request to exclude medical records, photos, and evidence of Plaintiff's injuries is DENIED;

c. Defendants' request to exclude Plaintiff's claim for emotional distress damages is DENIED; and

d. Defendants' request to exclude evidence of Plaintiff's phone damages is GRANTED;

8. Defendants' Eighth Motion in Limine [ECF No. 115] is **GRANTED;**

9. Defendants' Ninth Motion in Limine [ECF No. 116] is **GRANTED IN PART AND DENIED IN PART.** Specifically:

   a. Defendants' request to preclude Plaintiff from arguing about the reasonableness of force during and after the tasing is GRANTED; and

   b. Defendants' request to preclude Plaintiff from arguing about the reasonableness of force prior to the tasing is DENIED.

10. Defendants' Tenth Motion in Limine [ECF No. 122] is **GRANTED;**

11. Defendants' Eleventh Motion in Limine [ECF No. 123] is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART.** Specifically:

    a. Defendants' request to preclude Plaintiff from discussing the City of Southfield's self-insurance or its collective bargaining agreement with the police force is GRANTED to the extent that Plaintiff cannot raise the issue for the first time on his own; however

    b. Defendants' request to preclude Plaintiff from discussing the self-insurance or collective bargaining agreement is DENIED WITHOUT PREJUDICE to the extent that Plaintiff may raise the issue if Defendants "open the door" to such evidence;

12. Defendants' Twelfth Motion in Limine [ECF No. 124] is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART.** Specifically:

a. Defendants' request to exclude argument that Defendants should have used "best techniques" or "least intrusive force available" is GRANTED;

b. Defendants' request to exclude argument that Defendants used "bad tactics" leading to the need to use force is GRANTED; and

c. Defendants' request to exclude all discussion of alternative tactics under the circumstances is DENIED WITHOUT PREJUDICE;

13. Plaintiff's First Motion in Limine [ECF No. 117] is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART.** Specifically:

a. Plaintiff's request to preclude Defendants from offering evidence of his prior warrants and driving record is GRANTED to the extent that Defendants seek to use it to demonstrate the reasonableness of force used;

b. Plaintiff's request to preclude Defendants from offering evidence of his prior warrants and driving record is GRANTED to the extent that Defendants seek to use it to counter Plaintiff's claimed damages;

c. Plaintiff's request to preclude Defendants from offering evidence of his prior warrants and driving record is GRANTED to the extent that Defendants seek to use it to attack Plaintiff's credibility; and

     d.  Plaintiff's request to preclude Defendants from calling the Farmington Hills police officers as impeachment witnesses is DENIED WITHOUT PREJUDICE;

14. Plaintiff's Second Motion in Limine [ECF No. 118] is **DENIED WITHOUT PREJUDICE;**

15. Plaintiff's Third Motion in Limine [ECF No. 119] is **GRANTED IN PART AND DENIED IN PART.** Specifically:

     a.  Plaintiff's request to preclude Defendants from arguing that Plaintiff knew why he was stopped is GRANTED to the extent that Defendants seek to introduce such argument to prove the reasonableness of force or the damages; however

     b.  Plaintiff's request to preclude Defendants from arguing that Plaintiff knew why he was stopped is DENIED to the extent that Defendants seek to cross-examine Plaintiff about the issue solely to attack his credibility, but only if Plaintiff "opens the door" to this line of questioning at trial;

16. Plaintiff's Fourth Motion in Limine [ECF No. 120] is **DENIED IN PART AND DENIED WITHOUT PREJUDICE IN PART.** Specifically:

     a.  Plaintiff's request to exclude the video evidence is DENIED; and

b.  Plaintiff's request to exclude the corresponding audio is DENIED
   WITHOUT PREJUDICE; and

17. Plaintiff's Fifth Motion in Limine [ECF No. 121; ECF No. 125] is **DENIED.**

**IT IS SO ORDERED.**

Dated:  April 1, 2025                        /s/Gershwin A. Drain
                                              GERSHWIN A. DRAIN
                                              United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 1, 2025, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager